## KRONICK v. SULLIVAN.
### No. 1121.

Municipal Court of Appeals for the
District of Columbia.

Argued Sept. 10, 1951.

Decided Oct. 3, 1951.

John C. Poole, Washington, D. C. (Dudley G. Skinker, Washington, D. C., on the brief), for appellant.

Hubert B. Pair, Asst. Corp. Counsel, Washington, D. C. (Vernon E. West, Corp. Counsel, and Chester H. Gray, Principal Asst. Corp. Counsel, Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Appellant brought an action in the nature of detinue for recovery of two rings in the possession of the property clerk of the Metropolitan Police Department of the District of Columbia. When suit was filed and trial was had appellant was confined in prison in the State of New York, and his case was presented by answers to written interrogatories and cross-interrogatories, and certain correspondence with and admissions by appellee. His evidence tended to prove the following facts.

Appellant purchased the two rings, one a diamond solitaire and the other a dinner ring, about April 1, 1949, from one Katz, a diamond broker, who was one of a group who congregated on the sidewalks of the

Bowery near Canal Street in the City of New York and engaged in the sale of jewelry. He paid $900 for the rings and received from Katz a bill of sale to Daniel Mills, an alias then used by appellant. This bill of sale was destroyed by appellant in August 1949 when he found it necessary to destroy all identification under his alias. The rings were purchased by appellant as an intended gift to a lady in Georgia to whom he was then engaged, but the engagement was broken and the gift was not made. In March 1949 appellant had met a Miss Woodward. He became friendly with her and on two occasions in July borrowed money from her which he repaid. About August 2 he met Miss Woodward in Washington and loaned her the rings. He did not give them to her but let her have them only for the pleasure of wearing them. He had not seen or heard from her since August 7, but he was informed by appellee that Miss Woodward had delivered the rings to the police department and had signed a statement to the effect that she had no claim to them and desired that they be returned to the rightful owner.

For the appellee there was testimony by a detective sergeant that he had interviewed appellant in a jail in Westchester, New York, and had told him Miss Woodward said she received the rings from him and said he had told her the rings were part of his mother's estate; and that, although appellant at first denied knowledge of the rings, on the following day he admitted they had been stolen but would not tell from whom.

Miss Woodward testified that appellant gave her the rings, telling her they were part of his mother's estate and that he wanted her to have them; that after being interviewed by a detective she surrendered the rings and other property given to her by appellant and later released her claim to the property and expressed a desire that it be returned to the rightful owner.

Appellant's criminal record was admitted in evidence over his objection.

The trial court found against appellant and from judgment on the finding this appeal was taken.

Appellant's chief contention is that the evidence established that he had possession of the rings and delivered them to Miss Woodward who delivered them to the police; that whether Miss Woodward received the rings as a loan or a gift, she released any claim she had to them; that appellant's prior possession entitled him to recover unless appellee proved superior title in himself or in another through whom he claimed; and that appellee admitted that he had no knowledge or record of any claim to the rings by anyone other than appellant, and admitted that the rings were not held as the proceeds of any specific crime.

From this evidence the trial court could have found that appellant purchased these rings or received them from his mother's estate or received them as the proceeds of crime. It could also have found that appellant gave the rings to Miss Woodward or that he loaned them to her. If the trial court found that appellant either purchased the rings or received them from his mother's estate and that he made a gift of them to Miss Woodward, then appellant has no right of ownership or possession of the rings. The act of Miss Woodward in delivering the rings to the police and waiving her claim to them would not automatically restore title or right of possession to appellant as the former owner, assuming he was such.[1] On the other hand, if the trial court found that these rings were stolen property, then appellant has likewise established no legal claim to them. They were delivered by Miss Woodward to the police to be returned to the rightful owner and nothing in the record would compel a finding that appellant is such an owner.

Further error is assigned in the admission in evidence of appellant's criminal record. Conceding that Code 1940, § 14–305 authorizes proof of conviction of crime to affect the credibility of a witness, appellant

---

1. If appellant had been the lawful owner of the rings and had made a valid gift of them to Miss Woodward, the question would arise as to the effect of her waiver of claim to them, which waiver apparently was made without consideration.

argues that an unfair advantage was taken by not questioning him on cross-interrogatories concerning his record; that as it was known he would not be present at trial, he was placed at an extreme disadvantage when this evidence was brought in for the first time near the conclusion of the case. The Code Section permits the fact of a prior conviction to be proved either by cross-examination or by evidence aliunde. In view of the fact that appellant early in the proceedings disclosed that he was in prison, he could hardly have been surprised when his criminal record was used against him. And we note that he does not claim that the record was inaccurate in any particular.

Affirmed.